## WILLIAM THAYER *vs.* ANDREW C. WHITE.

A son, who had several times, with his father's express consent, bought goods of T. in the name and on the credit of his father, again bought goods of T. in the name of his father, on six months' credit: T. charged the goods to the father, and immediately wrote a letter to him, informing him thereof, and stating that he supposed it was correct, but thought proper to give him notice: The father made no reply to this letter. *Held,* in a suit by T. against the father, for the price of the goods, that the jury were warranted in inferring, from the father's silence, his consent to the transaction thus notified to him. *Held also,* that such consent was proof either of an original authority to the son, or of a subsequent affirmance by the father, which bound him to pay for the goods.

ASSUMPSIT for goods sold and delivered. At the trial in the court of common pleas, before *Wells,* C. J. it appeared that the goods were delivered to the defendant's son, who purchased them in the absence of the defendant; and that they were originally charged to the defendant. And there was evidence tending to prove that they were so charged by direction of the son, and that he, on previous occasions, had purchased goods of the plaintiff, which the plaintiff charged to the defendant, with the defendant's consent.

It appeared that after the goods, which were the subject of the present suit, were *delivered,* the following letter was immediately written to the defendant, and was shortly afterwards delivered to him. "Boston, October 29th 1841. Mr. A. C. White. This is merely to inform you that your son, Mr. A. H. White, of Liverpool, (N. S.) was here September 15th, and purchased of me glass ware to the amount of $111·92, and of *Mr. Thayer,* who does business in my store, paper

hangings, to the amount of $156·45; all of which he bought in your name, on six months' credit, and the bill made out to you. I have no doubt but that it is all correct; but still I thought it proper for me to inform you of the transaction. Yours, &c.                                  John Waldron."

To this letter the defendant did not return any answer.

The judge instructed the jury, (among other things, not excepted to,) that if they were satisfied that the defendant designedly omitted to answer this letter, with intention of having the plaintiff infer, from his silence, that he agreed to the transaction, such silence would of itself render him liable to the plaintiff; but that, if the omission to answer the letter was owing to carelessness, or any motive other than the design above mentioned, the defendant would not be affected by such omission; and that the burden of proving such design was upon the plaintiff.

The jury returned a verdict for the plaintiff, and the defendant excepted to said instructions.

*Wheelock*, for the defendant.

*D. A. Simmons*, for the plaintiff.

Shaw, C. J.   It appears by the bill of exceptions, that the only question is, whether the instruction of the court to the jury was correct, upon the point of ratification. The goods were purchased in Boston, by the son of the defendant, in the name and on the credit of the father, both father and son residing in Nova Scotia.   There was evidence that the goods were purchased in the name of the father, and charged to him, and that similar purchases had been made before, by the son, with the consent of the father.   This evidence was left to the jury, with directions not excepted to.   It seems, therefore, that the credit was originally given to the father, and that the son assumed to be authorized, and professed to act in the purchase, as the agent of the father.   No question, therefore, arises as to the liability of the defendant to pay the debt of another, which would require a written promise.   He is charged as an original debtor, and if the evidence does not prove him to be such debtor, this action cannot be maintained.

The question therefore is, whether the defendant was bound by the contract thus made on his account by his son. The son having professed to be the agent of the defendant, and to act as his agent, the rule of law applies, that a subsequent ratification is of equal force with a previous authority. The ratification relied on was a letter addressed by Waldron, who had made a similar sale, in behalf of himself and the plaintiff, to the defendant, and actually delivered to him, shortly after the transaction ; the sale having been made on six months' credit. The manifest object of this letter was, to give the defendant notice that these sales had been made on his credit, by one assuming to be his agent, and of course that the sellers of the goods looked to him for payment ; expressing a confidence that it was all correct, that is, that the son had been duly authorized, but giving the father an opportunity to deny it, if it were otherwise. The court instructed the jury, that if the defendant designedly omitted to answer this letter, with the intention of having the plaintiff infer, from his silence, that he had agreed to the transaction, such silence would of itself render the defendant liable to the plaintiff ; but if the omission was owing to carelessness, or any other motive than the design aforesaid, the defendant would not be affected by his omission ; and that the burden of proof was on the plaintiff to prove such design. This charge, we think, was correct, and quite favorable enough to the defendant. The sole object, in this part of the case, was to prove the authority of the son to purchase in the name and on the credit of his father ; and a designed omission to answer such a letter of inquiry would be an admission of such authority. There may be cases, where a person, receiving such a letter from a stranger, would not be reasonably called upon to make any answer. But here was a strong call on the defendant to make answer, if he intended to disown the authority. The assumed agent was his son, a son who had exercised a similar authority before, with his consent. He was informed of the precise amount of the purchase, and of the term of credit, which had several months to run, during

which the plaintiff could bring no action. Had the defendant immediately disavowed the authority, the plaintiff would not only have had a right of action against the son, but might have brought such action forthwith, and perhaps secured himself without waiting for the expiration of the credit. It w is therefore a case in which the jury were well warranted in inferring the defendant's consent to the transaction thus notified to him, from his silence; and if he did so consent, *the court were well warranted in saying, that such consent was proof, either of an original authority, or of a subsequent affirmance, by which he was bound.*

*Exceptions overruled*